# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY MCCULLOUGH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. CCB-19-926 |
| | * | |
| ANNE ARUNDEL COUNTY, MARYLAND, | * | |
| *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Anthony McCullough filed an eighteen-count complaint against defendants Anne Arundel County, Maryland ("Anne Arundel"), and Anne Arundel County Police Department ("AACPD") police officers Paul Smith, Devin Simmons, and Michael Radzibaba (the "officer defendants"), alleging violations of the U.S. and Maryland constitutions as well as various tort claims. (Am. Compl, ECF 16).[1] Anne Arundel and Radzibaba filed a motion to dismiss Counts I–VI and VIII–XVIII against Anne Arundel, and Counts I, III–VI, and VIII–XVIII against Radzibaba. (Mot., ECF 18). Smith and Simmons also filed a motion to dismiss Counts I, III–VI, and VIII–XVIII as asserted against them, adopting and incorporating the arguments set forth in Anne Arundel and Radzibaba's motion to dismiss. (ECF 23). The motions have been fully briefed, and no oral argument is necessary.[2] For the reasons explained in this

---

[1] In McCullough's original complaint, he also asserted claims against Anne Arundel police officers Tackett and Ronahghan, as well as Anne Arundel Chief of Police Timothy Altomare. (ECF 1). McCullough's Amended Complaint, (ECF 16), does not name these defendants.

[2] McCullough filed a response in opposition to Anne Arundel and Radzibaba's motion to dismiss, (ECF 20), and filed another response to Smith and Simmons's motion, incorporating by reference the arguments set forth in his first response, (ECF 25). Anne Arundel and Radzibaba replied to McCullough's response. (ECF 22). Smith and Simmons separately filed a reply stating that they adopted and incorporated the arguments set forth in Anne Arundel and Radzibaba's reply. (ECF 27).

memorandum, the motions will be granted in part and denied in part.

## BACKGROUND[3]

The following facts are taken from the Amended Complaint. On or about June 24, 2016, at approximately 1:10 am, McCullough was driving below the posted speed limit of 50 miles per hour ("mph") on Fort Smallwood Parkway in Anne Arundel County, Maryland. (Am. Compl. ¶¶ 10, 12, 16). After McCullough passed a gas station where several marked police cars were parked, one of the police cars pulled out of the gas station and began following him. (*Id.* ¶¶ 11, 13). McCullough slowed down and turned onto a side street, Manchester Road, at which point the lights on the police car, which was still following him, began flashing. (*Id.* ¶¶ 14–15). McCullough was not sure if he was being pulled over and did not immediately stop, but moved to the side of the road to let the car pass. (*Id.* ¶ 17). When the police car continued following behind him, McCullough realized he was being pulled over and "slowly rolled his car further towards the curb and then placed his vehicle in park." (*Id.* ¶ 17).

After McCullough stopped his car, an officer later identified as Smith exited the police car, began yelling at McCullough, and approached McCullough's driver's side door. (Am. Compl. ¶ 19). Smith, who had his hand on his weapon, yelled at McCullough to place his hands out of the window. (*Id.* ¶ 20). McCullough placed his left hand out the driver's-side window and his right hand through the sun roof. (*Id.*).[4] Smith then told McCullough to turn off his vehicle.

---

[3] McCullough makes many factual allegations in his Amended Complaint, not all of which are relevant to resolution of the motion to dismiss. The court recites the minimum facts necessary.
[4] In the Amended Complaint, McCullough states that he placed his hands out the window "promptly," a characterization that is contradicted by footage of the incident, which McCullough provides as an exhibit to his opposition to the motion to dismiss. (Dash Cam Video, Opp'n Ex. A, ECF 20-2). According to the video, an officer asks McCullough multiple times to place his hands outside the window before any officers exit the police car. (Dash Cam Video at 1:24–40). After the fourth request, McCullough places only his left hand outside the driver's side window. (*Id.* at 1:40–43). The officer asks McCullough again to place his hands outside the window, but McCullough's right hand remains inside the car. (*Id.* at 1:49–2:01). Only then does Smith approach the car, and Smith and McCullough begin yelling at each other. (*Id.* at 2:01–15). Smith again asks McCullough to place his hands outside the window. (*Id.* at 2:13–16). McCullough then appears to extend his right arm through the sun roof.

(*Id.* ¶ 21). McCullough brought his hands back into his car and picked up his cell phone, intending to record the police interaction. (*Id.* ¶¶ 22–24). Upon seeing that McCullough was holding a cell phone,[5] Smith reached into the car, took the phone, and threw it over McCullough's car and into a yard. (*Id.* ¶¶ 23–24). Smith then reached back into the car to remove the keys from the ignition, which triggered a security alarm. (*Id.* ¶ 25). Smith grabbed McCullough's arm, opened the door, and tried to pull McCullough out of the car. (*Id.* ¶ 26). McCullough was still wearing his seatbelt, so as Smith pulled McCullough's upper body out of the car, McCullough's lower body remained strapped into the driver's seat. (*Id.* ¶ 27). Four other officers, later identified as Radzibaba, Simmons, Tackett, and Ronahghan, began assisting Smith in pulling McCullough out of the car. (*Id.* ¶ 28).[6] McCullough's entire body was finally removed from the car and he was forced, face-down, into the road. (*Id.* ¶ 29). While placing McCullough's arm behind his back, Smith twisted McCullough's right shoulder, upon which McCullough had recently had rotator cuff surgery, resulting in the shoulder's dislocation. (*Id.* ¶ 30).[7] McCullough informed the officers of his shoulder and knee injuries, which the officers ignored. (*Id.* ¶¶ 31–32).

McCullough was informed that he was pulled over for speeding, as he had been driving 49 mph in a 35-mph zone. (Am. Compl. ¶ 35). McCullough was placed in handcuffs, pulled to his feet, placed in the front seat of a police car, and taken to the local detention facility. (*Id.* ¶¶

---

(*Id.* at 2:16–23). Based on McCullough's own evidence, then, a full minute passed before McCullough complied with the officer's repeated demand that he place his hands outside the window.

[5] In his report, Smith states he saw "an unidentifiable large black object filling and gripped in his hand and pointed at me." (Police Report at 3, Opp'n Ex. B, ECF 20-3).

[6] McCullough's allegation that four officers pulled him out of his car is contradicted by the video. The video shows that two officers come to assist Smith in pulling McCullough out of the car, (Dash Cam Video at 3:07-13); the third and fourth officers do not approach McCullough until he was already face-down on the ground, (*id.* at 3:38–45).

[7] McCullough's allegation that Smith dislocated McCullough's shoulder is contradicted by the video. The video shows that a different officer—not Smith—was the one to place McCullough's right hand behind his back. (Dash Cam Video at 3:07–18).

33, 39). McCullough was not read his *Miranda* rights. (*Id.* ¶ 39). Sometime later, McCullough was taken to the emergency room, where he received minimal treatment. (*Id.* ¶¶ 40–43). McCullough was then taken to central booking. (*Id.* ¶ 44). While McCullough was being discharged, Smith reviewed McCullough's information, including his address, and said, "Oh, you live in that area," meaning the area where McCullough was arrested. (*Id.*).

The next day, McCullough received additional medical treatment and was informed that his shoulder was dislocated, and that he would need a second rotator cuff surgery. (Am. Compl. ¶ 45). McCullough also sustained bruising, broken veins, and a fracture in his right hand. (*Id.* ¶ 46). McCullough's knees were also injured in the police altercation, and he eventually underwent a total knee replacement of his right knee. (*Id.*).

When McCullough attempted to retrieve his vehicle from the police, he was informed that it would not be released for several days. (Am. Compl. ¶ 47). When McCullough finally gained access to his car, it had been "ransacked" and its interior damaged. (*Id.* ¶ 51).

McCullough was charged with nine offenses: (1) disorderly conduct; (2) failure to obey a reasonable lawful order; (3) resisting arrest; (4) disturbing the peace/loud noise; (5) speeding; (6) driving in excess of reasonable and prudent speed; (7) failure to obey properly placed traffic control devices; (8) negligent driving; and (9) driver use of horn when not reasonably necessary. (Am. Compl. ¶ 53). At his jury trial on July 26, 2017, McCullough was found not guilty of eight of the nine offenses, but received a probation before judgment ("PBJ") on the speeding citation. (*Id.* ¶¶ 54–55).

McCullough's Amended Complaint asserts eighteen counts against the defendants: violations of Fourteenth Amendment due process and equal protection (Count I); use of excessive force in violation of the Fourth Amendment (Count II); unlawful seizure in violation of

the Fourth Amendment (Count III); unlawful search in violation of the Fourth Amendment (Count IV); use of an unconstitutional policy or practice (*Monell* claim) (Count V); violations of due process and equal protection under Articles 24 and 26 of the Maryland Declaration of Rights (Count VI); use of excessive force in violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count VII); unlawful seizure under Articles 24 and 26 of the Maryland Declaration of Rights (Count VIII); unlawful search under Articles 24 and 26 of the Maryland Declaration of Rights (Count IX); use of an unconstitutional policy or practice (*Longtin* claim) (Count X); malicious prosecution (Count XI); negligence (Count XII); gross negligence (Count XIII); false arrest (Count XIV); false imprisonment (Count XV); abuse of process (Count XVI); negligent training, supervision, and retention (Count XVII); and battery (Count XVIII). As the Amended Complaint does not suggest otherwise, the court assumes that all Counts are asserted against all defendants.[8]

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to

---

[8] The defendants do not seek dismissal of Count VII or Count II against the officer defendants.

5

plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.,* 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

### I.   Immunity

The defendants argue that certain claims against Anne Arundel and the officer defendants must be dismissed under the doctrines of governmental immunity and public official immunity, respectively. The court will address each in turn.

#### A.  Governmental Immunity: Tort Claims Against Anne Arundel (Counts XI–XVIII)

In Maryland,[9] "a municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity." *Nam v. Montgomery Cty.*, 127 Md. App. 172, 183 (1999) (quoting *Bradshaw v. Prince George's Cty.*, 284 Md. 294, 300 (1979), *abrogated on other grounds by Cox v. Prince George's Cty.*, 296 Md. 162, 168 (1983)) (alteration omitted). "Governmental" acts are those "performed [] for the common good of all" rather than "for the special benefit or profit" of the municipality. *Tadjer v. Montgomery Cty.*, 300 Md. 539, 547 (1984). The claims against Anne Arundel arise from the alleged conduct of its police officers, who—in effecting a traffic stop of McCullough and subsequently arresting him—were clearly performing "governmental function[s]." *See Quecedo v. Montgomery Cty.*, 264 Md. 590, 596 (1972); *see also Wynkoop v. Mayor and Council of*

---

[9] The parties agree that Maryland law applies.

6

*Hagerstown*, 159 Md. 194, 150 A. 447, 450 (1930).[10]

McCullough does not appear to contest that the officers' actions were "governmental" in nature. He instead argues that under the Local Government Tort Claims Act ("LGTCA"), Anne Arundel is not immune from suit. He is mistaken. The LGTCA provides, in relevant part, that "[a] local government may not assert governmental or sovereign immunity *to avoid the duty to defend or indemnify an employee established in this subsection*." Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(2) (emphasis added). The Maryland Court of Special Appeals has likened this indemnity provision to an insurance policy: "The insurance company is liable for such damages as its assured may inflict, but, generally speaking, the insurance company is not an entity which may be sued for its assured's torts." *Nam*, 127 Md. App. at 184. The LGTCA does not contain a "specific waiver of governmental immunity when a governmental entity is sued in its own capacity," and thus "does not create liability on the part of the local government as a party to the suit." *Nam*, 127 Md. App. at 184 (quoting *Khawaja v. Mayor & City Council, City of Rockville*, 89 Md. App. 314, 325 (1991)) (emphasis omitted). Accordingly, Anne Arundel is immune from direct suit based on the alleged torts of its police officers, and Counts XI–XVIII against it must be dismissed.

### B. Public Official Immunity: Negligence and Battery Claims Against the Officer Defendants (Counts XII–XIII, XVII, and XVIII)

The defendants argue that the officer defendants are immune from suit on Counts XII (negligence), XIII (gross negligence), XVII (negligent training, supervision, and retention), and

---

[10] The court notes that Count XVII (negligent training, supervision, and retention) does not arise from the specific actions of the police officers who stopped and arrested McCullough, but rather from Anne Arundel's alleged "breach[] of its duty to train, supervise, and retain competent supervisors and employees." (Am. Compl. ¶ 260). Governmental immunity bars this tort claim. Like the conduct of the officer defendants here, Anne Arundel's training, supervision, and retention of AACPD employees is clearly a "governmental" rather than "proprietary" function.

XVIII (battery), under the doctrine of public official immunity. Police officers are public officials who enjoy common law immunity from suit for negligent acts performed during the course of their discretionary duties. *Houghton v. Forrest*, 412 Md. 578, 585 (2010). Common law public official immunity does not, however, extend to intentional torts, *id.* at 586, nor does it apply to malicious or grossly negligent acts, *Cooper v. Rodriguez*, 443 Md. 680, 714 (2015). Malicious conduct is "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre v. Pope*, 402 Md. 157, 182 (2007). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* at 187 (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)).

McCullough's negligence claim—as distinguished from his gross negligence claim— consists of the allegation that "[t]he Defendants breached [a] duty of care by engaging in excessive force by manhandling Plaintiff despite his pleas and entreaties to treat him with care because of his recent surgeries." (Am. Compl. ¶ 222). In order to state a claim of negligence against the officer defendants that would not be barred by public official immunity, McCullough must allege that the negligent use of excessive force was malicious. McCullough contends that his allegation, incorporated into all 18 counts of the Amended Complaint, that "Defendant officers committed each of the acts knowingly, intentionally, and maliciously" suffices to plead malice with respect to his negligence claim. (Opp'n at 31, ECF 20 (quoting Am. Compl. ¶ 66)). Not so. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). McCullough's allegation that "[t]he officers' actions against Mr. McCullough were committed because of his

race," (Am. Compl. ¶ 60), is exactly the kind of conclusory statement deemed insufficient by the Supreme Court in *Iqbal*. *See* 556 U.S. at 680–81 (the "bare assertion" that federal officials "maliciously" agreed to subject a detainee to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin" was insufficient to survive Rule 12(b)(6) dismissal). Accordingly, McCullough's negligence claim fails, and Count XII against the officer defendants will be dismissed.

The defendants argue that McCullough's failure to plead malice with respect to the gross negligence and battery claims also compels dismissal. As common law public official immunity does not apply to these claims, the defendants rely on a Maryland statute which provides that "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action." *See* Md. Code Ann., Cts. & Jud. Proc. § 5-507(a)(1). But McCullough contends that municipal liability under § 5-507 does not apply to AACPD officers. (Opp'n at 31–32). He points to *Houghton v. Forrest*, in which the Maryland Court of Appeals held that the Baltimore City Police Department ("BCPD") is not a "municipal corporation" within the meaning of § 5-507 and that its officers are not entitled to immunity under that statute. *See Houghton*, 412 Md. at 588–89. Without providing supporting authority, McCullough asserts that the same is true for AACPD officers. The defendants do not respond to this argument in their Reply.

While AACPD's status as a state or municipal agency within the meaning of § 5-507 may be an interesting question of Maryland law,[11] the court need not resolve it here. Assuming

---

[11] In *Houghton*, the Court of Appeals held that because the BCPD was created through an act of the Maryland General Assembly, it is a state agency rather than a municipal agency, and that consequently, its officers cannot claim municipal official immunity under § 5-507. *Houghton*, 412 Md. at 588–89. The AACPD also was created by an act of the General Assembly. *See* 1937 Md. Laws 349–355. But at least one court in this district has held that § 5-

without deciding that AACPD officers are not entitled to § 5-507 municipal official immunity,

the defendants have failed to persuasively argue that the gross negligence and battery claims

against the officer defendants should be dismissed. Their only argument for dismissal—

McCullough's failure to plead malice—is insufficient, as neither a gross negligence claim nor a

battery claim *requires* a showing of malice. "[M]alice [is] something beyond the merely reckless

or wanton conduct that would be embodied within gross negligence." *See Shoemaker v. Smith*,

353 Md. 143, 164 (1999). And battery "requires not a specific desire to bring about a certain

result, but rather a general intent to unlawfully invade another's physical well-being through a

harmful or offensive contact[.]" *Beall v. Holloway-Johnson*, 446 Md. 48, 67 (2016). Indeed, "[a]

civil battery may be committed without actual malice." *Id.* at 72. McCullough's failure to plead

malice thus will not be applied to dismiss these claims at this stage of the case; the court will not

dismiss Counts XIII and XVIII against the officer defendants.

    While the defendants appear to argue that McCullough's negligent training, supervision,

and retention claim (Count XVII) against the officer defendants should be dismissed pursuant to

public official immunity, (Mot. at 16–17, ECF 18-1), the claim instead must be dismissed for the

simple reason that McCullough asserts this claim only against Anne Arundel. (Am. Compl. ¶¶

254–60). McCullough cannot prevail on a claim of negligent training, supervision, and retention

against the officer defendants because he does not allege that the officers themselves engaged in

negligent training, supervision, and/or retention. (Am. Compl. ¶¶ 254–60). Accordingly, Count

XVII against the officer defendants will be dismissed.

---

507 municipal official immunity applies to AACPD officers. *See Mills v. Anne Arundel Cty., Maryland,* No. CV RDB-15-0495, 2016 WL 3057973, at *6 (D. Md. May 31, 2016). Additionally, other Court of Appeals opinions suggest that BCPD's status as a state agency is unique. *See Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 668–69 (1988), *superseded on other grounds by statute as stated in D'Aoust v. Diamond*, 424 Md. 549, 586 (2012) ("Unlike other municipal or county police departments which are agencies of the municipality or county . . . the Baltimore City Police Department is a state agency." (citing *Cox*, 296 Md. at 165–170)).

## II. Federal and State Constitutional Claims

McCullough alleges violations of the Fourth and Fourteenth Amendments of the U.S. Constitution (Counts I–V) and violations of Articles 24 and 26 of the Maryland Declaration of Rights (Counts VI–X). The defendants argue that all constitutional claims, except Count VII, should be dismissed as to Anne Arundel, and that all constitutional claims, except Counts II and VII, should be dismissed as to the officer defendants.

### A. Unconstitutional pattern or practice claims (Counts V and X)

In Counts V and X, McCullough alleges that the defendants' "pattern and practice" of abusing authority, using excessive force, and conducting unreasonable searches and seizures violated his rights under the federal constitution (Count V) and the Maryland Declaration of Rights (Count X). (Am. Compl. ¶¶ 133–36; 209–10).[12] As a threshold matter, the court notes that McCullough brings these claims expressly under theories of liability used to hold municipalities liable for acts of its officials: In the Amended Complaint, McCullough captions Counts V as a "*Monell*" claim and Count X as a "*Longtin*" claim. As the court will explain in more detail below, *Monell* and *Longtin* are cases in which the Supreme Court and the Maryland Court of Appeals, respectively, held that municipalities may be liable for the torts of their officials where the officials acted in accordance with an unconstitutional policy, pattern, or practice. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690–91 (1978); *Prince George's Cty. v. Longtin*, 419 Md. 450, 495 (2011). By the very nature of the claims, then, it appears that McCullough does not assert Counts V and X against the officer defendants. The defendants ostensibly seek dismissal of Counts V and X against the officer defendants, (Mot. at 3, 19), but

---

[12] While Count V specifically includes the allegation that the "pattern and practice" included unreasonable searches and seizures, Count X only refers to "excessive force and other misconduct." (Am. Compl ¶¶ 208–13). For the purposes of this motion, however, the court will assume that Counts V and X are co-extensive and encompass the same alleged conduct.

do not explain why, and McCullough's Opposition contains no arguments that these claims should proceed. In any event, the court will dismiss Counts V and X against the officer defendants, as McCullough cannot prevail on *Monell* or *Longtin* claims—which are vehicles for municipal liability—against individual officers.

With respect to the *Monell* claim (Count V) against Anne Arundel, the defendants argue that McCullough pleads insufficient facts to establish an unconstitutional pattern or practice. Count V, like all federal constitutional claims brought against state officials, is brought pursuant to 42 U.S.C. § 1983, which provides that any person who, "under color" of state law, "shall be liable to the party injured." *See* 42 U.S.C. § 1983. "[A] municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014). To prevail on a *Monell* claim,

> A plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference. Both knowledge and indifference can be inferred from the extent of employees' misconduct. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only widespread or flagrant violations will.

*Owens*, 767 F.3d at 402–03 (internal citations, quotation marks, and alterations omitted).

In his Opposition, McCullough clarifies that his allegations "regarding the unconstitutional pattern and practice of Defendant County" appear in paragraphs 135–36 and 138–44 of the Amended Complaint. (Opp'n at 13–14). In this portion of the Amended Complaint, McCullough alleges that Anne Arundel "permitted and tolerated" patterns and practices of "excessive force," "brutality," "abuse of power and authority," and "illegal searches and seizures."[13] McCullough does not include details of any other alleged incidents tending to

---

[13] On the face of Count V, it is unclear whether McCullough asserts a separate claim that Anne Arundel's "failure to

12

support the allegation of patterns of "[e]xcessive force and other instances of misconduct," stating only that "[t]his pattern and practice [of excessive force and misconduct] has been manifested in other prior incidents with Anne Arundel County officers." (Am. Compl. ¶ 144).[14] The Fourth Circuit, however, has set a low pleading standard for *Monell* claims. In *Owens*, the Fourth Circuit held that a plaintiff's *Monell* claim that BCPD had an unconstitutional custom of suppressing exculpatory evidence survived Rule 12(b)(6) dismissal where the plaintiff "alleged facts—the existence of 'reported and unreported cases' and numerous 'successful motions'— which, if true, would buttress his legal conclusion." 767 F.3d at 403. McCullough's allegation that "other prior incidents" support his claim of unconstitutional patterns and practices likely meets this low bar. *Cf. Johnson v. Holmes*, 204 F. Supp. 3d 880, 891–92 (W.D. Va. 2016) (claim that a municipality had a policy of targeting African American men for searches and seizures survived dismissal where the plaintiff alleged the municipality was aware of the policy through "numerous complaints made by African-American citizens"). Although *proving* that Anne Arundel maintained the alleged unconstitutional patterns and practices will be "no easy task," *see Owens*, 767 F.3d at 402, the court finds that McCullough has alleged minimally sufficient facts to allow Count V to proceed.

---

properly train, prosecute, supervise and discipline officers" also constituted an unconstitutional pattern or practice. (Am. Compl. ¶ 137); *see also Spell v. McDaniel*, 824 F.2d 1380, 1389–90 (4th Cir. 1987) (deficient training is a "culpable municipal 'policy'" within the meaning of *Monell*). McCullough's Opposition, however, suggests that he does *not* assert a separate deficient policy claim. McCullough does not include paragraph 137 when recounting his allegations of Anne Arundel's unconstitutional patterns and practices. (Opp'n at 13–14). Instead, McCullough argues that Anne Arundel's "failure to properly train, prosecute, supervise and discipline officers" is evidence of Anne Arundel's failure to correct unconstitutional behavior. (Opp'n at 15). As the Fourth Circuit explained in *Owens*, a municipality's "failure to correct" unconstitutional practices is an *element* of proving a *Monell* claim, not its own cause of action. 767 F.3d at 402–03. The court thus concludes that McCullough does not assert a separate *Monell* claim for deficient training.

[14] With respect to the alleged practice of "illegal searches and seizures," McCullough cites statistics suggesting that African-American motorists in Anne Arundel—a majority-Caucasian county—are disproportionately stopped and searched. (Am. Compl. ¶¶ 138–43). It is not clear from the face of the Amended Complaint whether McCullough intended to include the alleged practice of "illegal searches and seizures" as one of the alleged patterns of misconduct that can be proven through "other prior incidents." (*Id.* ¶ 144). For the purposes of this motion, the court assumes that McCullough did intend to include the alleged search-and-seizure practice in this category.

Having determined that Count V should not be dismissed at this stage, the court also

finds that McCullough's *Longtin* claim (Count X) should proceed as well. Courts in this district

have stated that "'*Longtin* claims are essentially Maryland's version of *Monell* claims.'" *Krell v.*

*Queen Anne's Cty.*, No. CV JKB-18-637, 2018 WL 6523883, at *16 (D. Md. Dec. 12, 2018)

(quoting *Rosa v. Bd. of Ed. of Charles Cty.*, Civ. No. AW-11-2873, 2012 WL 3715331, at *9 (D.

Md. Aug. 27, 2012). Moreover, the defendants argue in their motion to dismiss that "the analysis

for Count V and X is identical." (Mot. at 8). Accordingly, Count X will not be dismissed.[15]

### B. Fourth and Fourteenth Amendment claims against Anne Arundel

The defendants argue that McCullough's Fourth and Fourteenth Amendment claims

(Counts I–IV), asserted via § 1983, against Anne Arundel fail as attempts to assert *respondeat*

*superior* claims. (Mot. at 7–8); *see Monell*, 436 U.S. at 691 ("[A] municipality cannot be held

liable under § 1983 on a *respondeat superior* theory.").[16] McCullough counters that Counts I–IV

do not assert liability against Anne Arundel via *respondeat superior*, but rather through a theory

of *Monell* liability. (Opp'n at 13). In their Reply, the defendants argue that if Counts I–IV against

Anne Arundel are indeed intended premised on *Monell* liability, they should be dismissed as

duplicative of Count V. (Reply at 5). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a

pleading . . . any redundant . . . material.").

It is not clear from the face of the Amended Complaint that McCullough intended to

---

[15] The court will, however, bifurcate the *Monell* and *Longtin* claims against Anne Arundel from the rest of the issues in the case. Success on the *Monell* and *Longtin* claims requires proof that McCullough was harmed by an unconstitutional policy or practice, but he will first need to show that the officer defendants in fact violated his civil rights. Moreover, much of the evidence necessary to prove the *Monell* and *Longtin* claims likely will be irrelevant to the officer defendants' liability. In similar situations, courts in this district have found that bifurcation maximizes efficiency, minimizes unfair prejudice and delay, and results in fairer proceedings. *See Gray v. Maryland*, 228 F. Supp. 2d 628, 638 (D. Md. 2002); *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319–20 (D. Md. 1991). The court will thus stay McCullough's *Monell* and *Longtin* claims until the other claims have been resolved.
[16] By contrast, under Maryland law, municipalities may be held liable under a *respondeat superior* theory. *Longtin*, 419 Md. at 495.

14

assert Counts I–IV against Anne Arundel under a theory of *Monell* liability. Indeed, the only reference to *Monell* in the entire Amended Complaint is in Count V.[17] The court will nevertheless accept McCullough's representation that he proceeds on Counts I–IV against Anne Arundel under a *Monell* theory. In accepting this representation, however, the court finds Counts I–IV against Anne Arundel cumulative of Count V. Count I alleges that the officer defendants' actions violated McCullough's Fourteenth Amendment due process and equal protection rights; Count II alleges the use of excessive force in violation of the Fourth Amendment; Count III alleges an unlawful seizure in violation of the Fourth Amendment; and Count IV alleges an unlawful search in violation of the Fourth Amendment. Anne Arundel's potential *Monell* liability for the alleged conduct comprising these claims, however, is entirely captured by Count V. (Am. Compl. ¶¶ 135–36, 138–44 (alleging that Anne Arundel "permitted and tolerated" patterns and practices of "excessive force," "brutality," "abuse of power and authority," and "illegal searches and seizures")). The court will thus dismiss Counts I–IV against Anne Arundel.

## C. Arrest-related claims

The defendants argue that McCullough's claims challenging his arrest (Counts I, III, IV, VI, VIII, and IX) fail, as the entry of a PBJ on McCullough's speeding charge establishes that the officers had probable cause to stop, arrest, and search McCullough. The arrest-related § 1983 claims appear in Counts I (violations of Fourteenth Amendment due process and equal protection rights), III (unlawful seizure in violation of the Fourth Amendment), and IV (unlawful search in violation of the Fourth Amendment), and the arrest-related Maryland constitutional claims appear in Counts VI, VIII, and IX (asserting the same claims, but under Articles 24 and 26 of the

---

[17] McCullough captions Count V, "CIVIL RIGHTS ACT [42 U.S.C. § 1983] *Monell*-Unconstitutional Pattern or Practice." (Am. Compl. ¶¶ 133–45). Counts I–IV contain no reference, in the caption or otherwise, to *Monell*.

15

Maryland Declaration of Rights).[18] The court will address the seizure claims and the search claims separately.

### i. *Seizure claims*

Where a judgment in favor of a plaintiff's § 1983 claim would "necessarily imply" the invalidity of a criminal conviction, the claim "must be dismissed unless the plaintiff can demonstrate that the conviction . . . has already been invalidated." *See Ballenger v. Owens*, 352 F.3d 842, 846 (4th Cir. 2003) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (2003)). A PBJ, which "necessarily comes after a finding of guilt," "is the equivalent of a conviction" for purposes of determining the viability of a § 1983 claim. *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 379 (D. Md. 2018). A judgment in favor of McCullough on Counts III and the claims in Count I relating to the seizure would require a finding that there was no probable cause to stop and arrest McCullough, which would necessarily imply that the PBJ on the speeding charge was invalid. The PBJ establishes that McCullough was speeding, and "[a] police officer may arrest without a warrant a person who commits . . . [a] misdemeanor[19] in the presence or within the view of the police officer." *See* Md. Code, Crim. Proc. § 2-202(a). As McCullough offers no evidence that the PBJ has already been invalidated, these claims must be dismissed.[20]

The analysis of McCullough's seizure-related state constitutional claims is similar. "Under Maryland law, a conviction for a crime 'conclusively establishes the existence of probable cause' to support the criminal offense, even if the conviction is later reversed, unless it

---

[18] As the court explains in Part II.D, *infra*, Counts I and VI contain more than just search and seizure claims.

[19] The parties agree that the speeding charge was a misdemeanor.

[20] McCullough argues that the PBJ does not preclude his § 1983 claims because "his PBJ was a result of the fraud of the officer." (Opp'n at 23 (internal capitalization omitted)). The court is unaware of any such "fraud" exception to the requirement that a plaintiff whose § 1983 claim turns on the invalidity of an underlying criminal conviction prove that the conviction has already been invalidated. *See Ballenger*, 352 F.3d at 846. McCullough's reliance on *Evans v. Chalmers*, 703 F.3d 636, 647–48 (4th Cir. 2012), is inapposite, as the *Evans* plaintiffs' § 1983 claims did not implicate an underlying criminal conviction.

was obtained fraudulently." *See Stutzman,* 350 F. Supp. 3d at 380 (quoting *Zablonsky v. Perkins,* 230 Md. 365, 368–69 (1963)). McCullough's PBJ thus "conclusively establishes" that the officers had probable cause to stop and arrest him. *See id.* In his Opposition, however, McCullough attempts to avoid dismissal of the seizure claims by arguing that "his PBJ was a result of the fraud of the officer." (Opp'n at 23 (internal capitalization omitted)). McCullough's fraud claim consists entirely of his assertion Smith must have "lied to prosecutors" about the probable cause for the stop and arrest because McCullough was *not* speeding, (Opp'n at 25, 23–24 (quoting Am. Compl. ¶¶ 11, 12, 16, 35–37)), and that Smith's statement that McCullough *was* speeding cannot be trusted, as it appears in a "seriously compromised police report," (*id.* at 25). As evidence of the "seriously compromised" nature of the police report, McCullough directs the court to the Dash Cam Video. McCullough claims that the following statements from the police report are "false" and "refuted by the dash cam footage": (1) the statement that McCullough "sped off" after Smith stopped him; (2) the statement that McCullough did not comply with orders to put his hands outside the window; (3) the statement that McCullough blew his horn continually; and (4) the statement that McCullough resisted arrest. Upon review of the Dash Cam Video, the court disagrees that the statements in the police report are so refuted by the footage as to constitute fraud. Indeed, the footage shows that McCullough *did* continue driving after Smith initially stopped him, (Dash Cam Video at 1:00–15, Opp'n Ex. A, ECF 20-2), and that McCullough *did* initially refuse to comply with the demand that he place both hands outside the window, *see supra* note 4. Despite McCullough's claims to the contrary, the footage does not "clearly show[] that Defendant Smith set off Mr. McCullough's car alarm when he angrily reached into the vehicle and attempted to turn it off," (Mot. at 24); the sound that emanated from the vehicle when Smith reached into the car is also consistent with someone pressing on the

17

horn, (Dash Cam Video at 2:00–35). It is also not "clear" from the footage that McCullough

"never resisted Defendant Smith." (Opp'n at 25). Based on the arguments in his Opposition,

then, McCullough's fraud claim is premised entirely on Smith's supposed untrustworthiness,

supported only through overstated claims about what the Dash Cam Video shows. The court

cannot find that this adequately states a claim of fraud that "falls within [the] narrow exception to

the Maryland rule that a conviction determines conclusively the existence of probable cause[.]"

*See Asuncion v. City of Gaithersburg, Md.*, 73 F.3d 356, 1996 WL 1842, at *2 (4th Cir. 1996)

(unpub.) ("mere recitation of factual inaccuracy" insufficient to demonstrate that a § 1983

plaintiff's underlying conviction was obtained through perjury). Accordingly, the PBJ establishes

that the officers had probable cause to stop and arrest McCullough. Count VIII and the seizure

claims contained in Count VI will be dismissed.

>    *ii. Search claims*

It is less obvious that the PBJ compels dismissal of Counts IV and IX, in which

McCullough challenges the alleged search of his vehicle. (Am. Compl. ¶¶ 122, 124). The

defendants argue that a judgment in favor of McCullough's search claims would imply the

invalidity of the state court conviction for speeding. (Mot. at 14). This is not necessarily true.

The Fourth Amendment, as well as Maryland statutory law, permits a police officer to effectuate

a warrantless arrest where a misdemeanor has been committed in her presence. *See Atwater v.

City of Lago Vista*, 532 U.S. 318, 354 (2001); Md. Code, Crim. Proc. § 2-202(a). But a

misdemeanor arrest does not always justify a vehicular search. In *Arizona v. Gant*, the Supreme

Court held that a vehicle search incident to arrest does not comply with the Fourth Amendment

unless police reasonably believe that the arrestee "could have accessed his car at the time of the

search or that evidence of the offense for which he was arrested might have been found

therein[.]" 556 U.S. 332, 343–44 (2009). In so holding, the *Gant* Court noted that "when a recent

occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle

contains relevant evidence." *Id.* at 343. The court thus finds that judgment in favor of

McCullough on Count IV would not necessarily imply the invalidity of the PBJ; that is, even if

the stop and arrest of McCullough was permissible, it is possible that the search of his vehicle

was not. Similarly, with respect to McCullough's state constitutional search claim (Count IX),

the probable cause for the stop established by the PBJ does not necessarily translate to probable

cause for the search. *See Scott v. State*, 366 Md. 121, 139 (2001) ("[W]e have consistently

construed Article 26 as being in *pari materia* with the Federal provision and have accepted as

persuasive the Supreme Court's construction of the Fourth Amendment."). As the defendants

advance no other arguments for dismissal of these claims, Counts IX (against all defendants) and

IV (against the officer defendants[21]) will not be dismissed.

D. Counts I and VI

The defendants ostensibly seek dismissal of Counts I and VI in their entirety, but the

motion to dismiss only argues for dismissal of the search and seizure claims contained therein.

Counts I and VI, however, contain vague and expansive allegations of federal and state

constitutional violations beyond those directly challenging McCullough's search and seizure. In

Count I, McCullough alleges multiple violations of his Fourteenth Amendment rights to due

process and equal protection, alleging that

> Defendants Deprived Plaintiff of his rights under the Constitution, including, but
> not limited to:
> a. equal protection of the laws;
> b. freedom from imprisonment and seizure of freehold, liberty and
> privilege without due process, and without judgment of his peers;

---

[21] As the court explained in Part II.B, *supra,* Count IV against Anne Arundel will be dismissed as cumulative of
Count V.

      c. freedom from the deprivation of liberty without due process of the law, and without the judgment of his peers;

      d. freedom from the abuse of power by law enforcement and correctional officers;

      e. and freedom from summary punishment.

(Am. Compl. ¶ 74). McCullough also appears to assert an excessive force claim, (*id.* ¶¶ 75–76), a claim that he was "deprived of numerous protected property and liberty interests," (*id.* ¶ 77), a failure to render aid and/or a deliberate indifference to serious medical need claim, (*id.* ¶¶ 78, 88),[22] a disparate treatment claim, (*id.* ¶¶ 80–83), an unlawful search claim, (*id.* ¶¶ 84, 87), and an unlawful seizure claim, (*id.* ¶¶ 84, 87). Count VI is substantively similar to Count I but brings the claims under Articles 24 and 26 of the Maryland Declaration of Rights.[23]

As explained in Part II.C, *supra*, the court will dismiss the portions of Counts I and VI that challenge his seizure. But the defendants have not argued for dismissal of the other claims that appear in these Counts. Perhaps the defendants did not present arguments relating to these claims because they, like the court, had difficulty understanding what claims McCullough asserts in Counts I and VI. Nevertheless, the defendants have not moved for a more definite statement, *see* Fed. R. Civ. P. 12(e), and the court declines to dismiss these claims in the absence of arguments from the defendants. Accordingly, Counts I and VI against the officer defendants,

---

[22] The court construes McCullough's allegations that the defendants "refused to timely render appropriate medical assistance to Plaintiff, despite the means and duty to do so," (Am. Compl. ¶ 78) and were "deliberately indifferent to Mr. McCullough's safety and rights," (*id.* ¶ 88), as comprising a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment. "The Fourth Circuit has held that pretrial detainees have a clearly established right to immediate medical care when they are visibly injured and in pain." *Krell*, 2018 WL 6523883, at *11 (citing *Ervin v. Mangum*, 127 F.3d 1099, 1997 WL 664606, at *6 (4th Cir. 1997) (unpub.)).

[23] McCullough also repeats his "failure to aid" claim in Counts III and IV, which could be construed as an attempt to bring a "failure to aid" claim under the Fourth Amendment. To the extent that this claim exists, it is frivolous and will be dismissed. The Fourth Amendment "does not extend to the alleged mistreatment of arrestees[.]" *Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). Similarly, McCullough's repetition of the claim in Counts VIII and IX, his state constitutional claims of unlawful search and seizure, reads as an attempt to bring a "failure to aid" under Article 26 of the Maryland Declaration of Rights, "Maryland's analogue to the Fourth Amendment," *see Randall v. Peaco*, 175 Md. App. 320, 330 (2007), which Maryland courts "consistently construe[] . . . as being *in pari materia* with the Federal provision," *see Scott*, 366 Md. at 139. For the same reason a "failure to aid" claim may not be brought under the Fourth Amendment, it may also not be brought under Article 26.

except for the portions relating to McCullough's seizure, will proceed, on the assumption that McCullough may be able to clarify his claims in the future. Count VI against Anne Arundel will proceed, but as Count I against Anne Arundel is cumulative of Count V, *see supra* Part II.B, Count I will not.

## III.  Malicious Prosecution, False Arrest, False Imprisonment, and Abuse of Process Claims

Lastly, the defendants argue that the claims of malicious prosecution (Count XI), false arrest (Count XIV), false imprisonment (Count XV), and abuse of process (Count XVI) should be dismissed. As explained in Part I.A, *supra*, Anne Arundel is immune from suit on these tort claims, and the court will only analyze these claims as to the officer defendants.

### A.  Malicious prosecution

"The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron v. Strader*, 361 Md. 258, 264 (2000). The defendants argue that McCullough fails on element four, as the proceedings terminated in a PBJ, which was unfavorable to McCullough. McCullough counters that while he received a PBJ on the speeding charge, he was acquitted at a jury trial for the other eight charges. Even if his malicious prosecution fails as to the speeding charge, he argues, it should not be dismissed as to the others.

In support of their position that the proceedings did not terminate in McCullough's favor, the defendants rely on *Candelero v. Cole*, 152 Md. App. 190, 200 (2003). In *Cole*, the Maryland Court of Special Appeals held that proceedings did not terminate in a plaintiff's favor where the plaintiff was charged with multiple offenses and convicted on one, but the prosecution *nolle*

*prossed*[24] the other charges. *Id.* at 200. By contrast, McCullough relies on the seemingly irreconcilable *Hines v. French*, in which the Court of Special Appeals held that where a plaintiff was issued three traffic citations and one of them was *nolle prossed*, the proceedings on the *nolle prossed* charge terminated in her favor within the meaning of a malicious prosecution claim. 157 Md. App. 536, 553–54 (2004). Neither party, however, mentions *Albertson v. Scherl*, in which the Court of Special Appeals directly addressed the tension between *Candelero* and *Hines*, noting that the two cases "offer conflicting answers on the question of determining whether prior criminal proceedings terminate in a person's favor when there are multiple counts with differing outcomes." *See* 2017 WL 2687763, at *7 (Md. Ct. Spec. App. June 22, 2017). The *Albertson* court offered an alternate approach to those taken in *Candelero* and *Hines*, reasoning, "in determining whether a prior proceeding terminated in the favor of a plaintiff asserting a malicious prosecution claim . . . a court should consider a plaintiff's overall innocence of the prior charges, as an entire course of conduct, when that course of conduct arose from the same underlying act(s)." *Id.* at *10.

Relying on the persuasive authority of *Candelero*, *Hines*, and *Albertson*, the court finds that eight of the nine charges terminated in McCullough's favor. McCullough was acquitted of these charges by a jury, which makes his argument of favorable termination stronger than the *Candelero* and *Hines* plaintiffs'. Moreover, as McCullough was acquitted of all but one charge, he would likely prevail under the *Albertson* test, where the court "consider[s] a plaintiff's overall innocence of the prior charges." *Albertson*, 2017 WL 2687763, at *10. As the defendants point out in their Reply, however, the existence of probable cause defeats a malicious prosecution

---

[24] A disposition of "nolle prosequi" occurs when the government decides to drop a criminal charge. *See* Md. Rule 4-247(a) ("The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court.")

claim even when proceedings terminated in the plaintiff's favor. (Reply at 15). Here,

McCullough's speeding conviction establishes probable cause not only for that charge, but also

for three of the other charges: driving in excess of reasonable and prudent speed, failure to obey

properly placed traffic control devices, and negligent driving. Accordingly, Count XI against the

officer defendants will proceed, but only with respect to four of the criminal charges: disorderly

conduct, failure to obey a reasonable lawful order, resisting arrest, and disturbing the peace/loud

noise.[25]

B. False arrest and false imprisonment ·

"The elements of false arrest and false imprisonment are identical. Those elements are: 1)

the deprivation of the liberty of another; 2) without consent; and 3) without legal justification."

*Heron*, 361 Md. at 264. The defendants argue that McCullough's claims fail on element three, as

his seizure was legally justified. "Whether legal justification exists depends on whether the

officer acted with legal authority to arrest." *Stutzman*, 350 F. Supp. 3d at 380 (citing

*Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995)). As the court explained in Part II.C.i,

*supra*, the PBJ establishes that the the officers had probable cause to effectuate a warrantless

misdemeanor arrest. Counts XIV and XV will thus be dismissed.

C. Abuse of process

To state an abuse of process claim, a plaintiff must allege facts relating to the "misuse of

the tools the law affords litigants" once proceedings have been instituted. *See One Thousand

Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 39 (1997) (explaining the difference between

---

[25] In their Reply, the defendants argue that that Smith, who authored the police report, is the only defendant who "instituted" proceedings against McCullough and thus the only one who may be liable for malicious prosecution. (Reply at 15). The court is unpersuaded. The defendants cite no authority to support this argument, and in the context of a malicious prosecution claim, the Maryland Court of Appeals has suggested that "the making of an arrest may often be the first official action in a criminal proceeding." *See Krashes v. White*, 275 Md. 549, 555 (1975). The precise scope of each defendant's responsibility for "instituting" the proceedings can better be determined after discovery.

malicious prosecution and abuse of process claims) (emphasis omitted). The only conduct relevant to McCullough's abuse of process claim, then, is alleged conduct that occurred *after* criminal proceedings were instituted against him. *Id.* at 39–40. The defendants argue that McCullough has failed to allege any such facts. Indeed, the Amended Complaint makes only conclusory allegations against the defendants in Count XVI, claiming that "Defendants took advantage of the ordinary criminal process to harass and retaliate against Plaintiff"; "Defendants' actions were willful"; "This type of harassment and retaliation is not contemplated by law"; and "Defendants engaged in this harassment and retaliation for ulterior motives and out of ill will." (Am. Compl. ¶¶ 248–52). McCullough tries to rehabilitate this claim in his Opposition, arguing that all post-arrest conduct by the defendants qualifies as an abuse of process. (Opp'n at 35–38). McCullough, however, does not make these allegations in the Amended Complaint and the court will not consider them now. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). McCullough has thus failed to state a claim for abuse of process, and Count XVI will be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. The court will dismiss, in their entirety, Counts I–IV, VIII, and XI–XVIII against Anne Arundel, and Counts III, V, VIII, X, XII, and XIV–XVII against the officer defendants. The seizure-related claims in Counts I and VI will be dismissed, but remaining claims in Count I against the officer defendants, and Count VI against all defendants, will proceed. Counts V, IX, and X against Anne Arundel will not be dismissed, nor will Counts IV, IX, XIII, and XVIII against the officer defendants. Count XI against the officer defendants will proceed with respect

to four of the criminal charges—disorderly conduct, failure to obey a reasonable lawful order, resisting arrest, and disturbing the peace/loud noise—but will be dismissed with respect to the other charges. As the defendants do not seek dismissal of Count VII or Count II against the officer defendants, these claims also remain. The court will also bifurcate Counts V and X against Anne Arundel from the remaining claims and stay resolution of these Counts until the other claims are resolved. A separate order follows.

2/20/20
Date

Catherine C. Blake
United States District Judge