**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANTHONY MCCULLOUGH** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Civil Action No.:  1:19-cv-00926** |
| **ANNE ARUNDEL COUNTY,** *et al.* | * | |
| **Defendants** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
DEFENDANTS ANNE ARUNDEL COUNTY, MD,
CPL. SMITH, OFFICER RADZIBABA, AND OFFICER SIMMONS**

Defendants, Anne Arundel County, Maryland, Cpl. Smith, Officer Radzibaba, and Officer Simmons, by and through Genevieve G. Marshall, Senior Assistant County Attorney, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 105, file this Memorandum of Law in Support of Motion for Summary Judgment and state for cause to this Honorable Court:

## INTRODUCTION

In this 42 U.S.C. § 1983 case containing federal and state constitutional claims, as well as common law claims, discovery is complete. Plaintiff's claims that he was subjected to multiple torts during his valid arrest are contradicted by the objective evidence uncovered during discovery. The evidence produced in this case establishes that Plaintiff was arrested with a reasonable level of force and was not subject to any harm.  Summary judgment in Defendants' favor should now be entered on all claims.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint in this case on March 28, 2019 (Doc. 1) against seven Defendants including Anne Arundel County, Maryland, Cpl. Smith, Officer Radzibaba, and Officer Simmons.[1]  This Complaint set forth eighteen Counts.  May 10, 2019 several Defendants filed a Motion to Dismiss (Doc. 13).  On June 6, 2019 Plaintiff filed an Amended Complaint dropping his Complaint against three Defendants, and leaving the eighteen Counts against Defendants Anne Arundel County, Maryland, Cpl. Smith, Officer Radzibaba, and Officer Simmons. (Doc. 16).  On June 20, 2019 Defendants Anne Arundel County and Officer Radzibaba filed a Motion to Dismiss the Amended Complaint (Doc. 18), and on August 12, 2019 Cpl. Smith and Officer Simmons filed their Motion to Dismiss the Amended Complaint (Doc. 23).

After these motions were fully briefed, this Court issued a Memorandum and Order dated February 20, 2020 (Docs. 32 and 33).  When ruling on this Motion, the Court assumed all of Plaintiff's allegations as true.  The Motions to Dismiss were granted in part and denied in part. Counts I, II, IV[2] survived as to the three individual defendants, Cpl. Smith, Officer Radzibaba, and Officer Simmons, to the extent they did not relate to alleged seizure claims.  Count III was dismissed, and Counts I, II, IV were dismissed as to Anne Arundel County.  Counts V and X were dismissed against the three individual defendants, and stayed as to Anne Arundel County.  Counts

---

[1] Michael Radzibaba is now a Corporal with the Anne Arundel Police Department, and Paul Smith and Devin Simmons both retired from the Anne Arundel Police Department as Corporals.  For the purposes of simplicity, these three officers are titled as they were in the Amended Complaint: Cpl. Smith, Officer Radzibaba, and Officer Simmons.

[2] Count I is Plaintiff's claims of a Constitutional Fourteenth Amendment due process and equal protection violation; Count II is for a violation of the Fourteenth Amendment prohibition on excessive force; and Count IV is for a Fourth Amendment unlawful search violation.

{00332846.DOCX; 1}

VI and VII remain as to all defendants.[3]  Count VIII was dismissed as to all defendants.  Count IX remains as to all.[4]  After Count X, no subsequent Counts relate to Anne Arundel County.  Count XI[5] remains as to the three individual defendants only, but is limited to certain charges.[6]  Count XII was dismissed as to all, as were Counts XIV, XV, XVI, and XVII.  Counts XII and XVIII[7] survived as to as to the three individual defendants only.  Since this ruling, discovery has ensued and is now complete.

Defendants Anne Arundel County, Maryland, Cpl. Smith, Officer Radzibaba, and Officer Simmons, pursuant to this Court's Scheduling Order, now file a post-discovery dispositive motion.

## LEGAL STANDARD

Fed. R. Civ. P. 56 (a) provides that if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, the Court *shall* grant summary judgment. The Supreme Court has described this provision as "an integral part" of the Rules which is "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct 2548, 2555 (1986). As such it

> must be construed with due regard ... for the rights of persons opposing ... claims ... to demonstrate in the manner provided by the Rule, prior to trial, that the claims ... have no factual basis.  *Id*.

---

[3] Count VI is for a violation of Maryland Articles 24 and 26's Unlawful Search, and Count VII alleges a violation of Maryland Articles 24 and 26's Excessive Force.

[4] Count IX is for a violation of Maryland Articles 24 and 26's unlawful search.

[5] Count XI is for an allegation of Malicious Prosecution.

[6] Plaintiff was charged with nine offenses: (1) speeding, (2) driving in excess of reasonable and prudent speed, (3) negligent driving, (4) failure to obey properly placed traffic devices (5) disorderly conduct, (6) resisting arrest, (7) failure to obey a reasonable lawful order, (8) driver use of horn when not reasonably necessary, and (9) disturbing the peace/loud noise.  (Amended Complaint, Doc. 16 at ¶53).  Malicious prosecution related to the first four of these charges has been dismissed.  Only allegations related charges 5-9 remain.

[7] Count XIII alleges Gross Negligence, and Count XVIII alleges Battery.

*Celotex* places on the moving party the "initial responsibility of informing the district court of the basis for its motion" and then identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. "A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barrick v. Celotex*, 736 F.2d 946, 958-59 (4th Cir. 1984). In addition, the nonmovant cannot create a disputed fact through mere speculation or compilation of inferences. *Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330-331 (4th Cir. 1998).

The nonmovant cannot rest upon unsupported allegations, in his pleadings or elsewhere, but must show significant probative evidence to support those allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct 2505, 2510 (1986).  If the nonmovant fails to do so, then the Court has "an affirmative obligation . . . to prevent 'factually unsupported claims . . .' from proceeding to trial." *Felty v. Graves-Humphrey Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (emphasis added).  The Defendants respectfully suggest that the Court is obliged to do so in this case. [8]

## MATERIAL FACTS NOT IN GENUINE DISPUTE

Plaintiff is now 62 years old; he is African-American, single, retired, and lives in Glen Burnie.  On July 24, 2016, at approximately 1:10 a.m., Cpl. Smith conducted stationary radar traffic enforcement in the area of Ft. Smallwood Road and Manchester Road where the speed limit is 35 miles per hour.  (Ex. 1, Responses to Requests for Admission, at p. 3)  Cpl. Smith received

---

[8] It is noteworthy that in the relatively recent revisions to Rule 56, the language of the Rule was amended from "should grant" to "shall grant," (as the Rule had read from 1938 to 2007) in order to reaffirm the district court's obligation to grant summary judgment where appropriate.

radar readings between 49 and 50 miles per hour when Plaintiff drove past him (Ex. 2, Smith Deposition, at p. 25).  As a result, Cpl. Smith initiated a traffic stop of Plaintiff.  Cpl. Smith's dashboard camera captured the Incident and the enclosed thumb drive contains the video file.[9] (Ex. 3 – Video, VTS_01_1.VOB).

After Cpl. Smith activated his emergency lights to initiate the traffic stop, Plaintiff pulled over on Manchester Road and stopped his vehicle (1:10:32).  At the moment Cpl. Smith exited his vehicle to approach Plaintiff's vehicle, Plaintiff pulled his vehicle forward, then stopped a second time (1:11:03).  Cpl. Smith went back into his vehicle, repositioned it (1:11:11), and immediately gave verbal commands to Plaintiff to put his hands outside of the driver's window (1:11:18).  Cpl. Smith called for more units over his radio (1:11:32) and advised Plaintiff that he was being audio and video recorded (1:11:42).  Plaintiff did not immediately comply with Cpl. Smith's orders to place his hands outside of the window.  Plaintiff placed his left hand out of the window 17 seconds after Cpl. Smith ordered him to do so (1:11:35).  Instead of placing his right hand out of the window, Plaintiff placed his right hand up partially through his vehicle's sunroof (1:11:45).

Cpl. Smith approached Plaintiff's vehicle and gave further commands for Plaintiff to "keep his hands up" (1:12:00).  Then, when Cpl. Smith told Plaintiff to turn off his vehicle, Cpl. Smith observed Plaintiff make furtive movements inside the vehicle by reaching from his right side across his chest, displaying a dark object towards Plaintiff (1:12:21).  At that moment, because Cpl. Smith believed the object could be a gun (Ex. 2 at p. 49), Cpl. Smith reached into Plaintiff's vehicle, grabbed the object from Plaintiff's hand, and tossed it over Plaintiff's vehicle to the ground (1:12:23).  After Plaintiff was placed in handcuffs, Cpl. Smith determined the object was a cell

---

[9]  Time references to the video are in parentheses.

phone (1:14:39).  As Cpl. Smith grabbed and tossed the phone, Plaintiff indicated to Cpl. Smith that he was trying to record the incident (1:12:24).

Cpl. Smith continued to give commands to Plaintiff to turn off his vehicle, but Plaintiff pushed on the horn and refused to exit his vehicle (1:12:28).  Plaintiff alleges the vehicle horn was activated by Cpl. Smith reaching for his key fob, but the video does not seem to support that allegation.  Cpl. Smith's hands are on the outside of the vehicle when the horn begins to sound. Cpl. Smith again reached into Plaintiff's vehicle to try to turn it off but could not do so (1:12:32). Then, Cpl. Smith directed Plaintiff to undo his seatbelt and get out of the vehicle (1:12:39).  Once Plaintiff did not comply with those orders, Cpl. Smith again asked for assistance over his radio. (1:12:47).

Cpl. Smith unlocked Plaintiff's driver's side door, attempted to remove the seatbelt, and began to remove Plaintiff from the vehicle because he did not comply with orders to get out of it. (1:12:52). At the moment Cpl. Smith began to remove Plaintiff from his vehicle (1:13:03), Defendant Officers Michael Radzibaba[10] and Devin Simmons[11] arrived.  Cpl. Smith grabbed and pulled Plaintiff's left forearm while Officer Radzibaba pulled Plaintiff's right arm to extract him from his vehicle (1:13:05).  Officers Smith, Radzibaba, and Simmons were able to remove Plaintiff from his vehicle, but he was tangled and restrained in his seatbelt while dragged from his vehicle. While Officers Radzibaba and Smith tried to get Plaintiff's arms and hands under control, Officer Simmons cut Plaintiff's seatbelt to untangle him (1:13:10).  Once on the ground, Plaintiff said several times that he had a torn rotator cuff (1:13:16, 1:13:19, 1:13:23, 1:14:01), that he had surgery

---

[10] Officer Michael Radzibaba has been with the County Police Department since 2012.

[11] The County hired Officer Devin Simmons in 2007 and he retired from the County on November 1, 2018.

(1:13:48, 1:15:00), and that he had his knee replaced (1:14:19).  Plaintiff also said the officers twisted his arm (1:14:47, 1:14:51).

Officers Radzibaba and Simmons brought Plaintiff from the ground to stand, then took him and placed him in Cpl. Smith's vehicle (1:17:15).  Plaintiff complained of pain while in handcuffs in Cpl. Smith's vehicle (1:19:38).  While Cpl. Smith transported Plaintiff to Eastern District Police Station, Plaintiff asked for an ambulance for his "torn rotator cuff."  Paramedics arrived at the Station to transport Plaintiff to BWMC within eighteen minutes of Plaintiff's request.  BWMC discharged Plaintiff after a few hours.

On July 26, 2017, Plaintiff proceeded to trial on the charges in the Circuit Court of Anne Arundel County.  He received Probation Before Judgment ("PBJ") on the charge of driving vehicle on highway at speed exceeding limit (the "Speeding Charge").  The Circuit Court, however, found Plaintiff not guilty on the other eight charges.  (Doc. 16, Amended Complaint at  ¶¶54-55)

Cpl. Smith has testified that the actions of Plaintiff in pulling up after the initial stop, reaching and obtaining an unknown object after failing to obey his commands to put both hands out of the window, turn off his vehicle, and exit his vehicle caused him substantial concern for his safety.  (Ex. 2 at pp. 85-87) Plaintiff stiffened his arms/hands and did not easily allow the officers to place him in handcuffs.  Plaintiff testified that he "tensed up" from the time he started coming out of his vehicle until the time he came out of his vehicle.  (Ex. 4, McCullough Deposition, at p. 106)

A search would have typically been made to inventory the vehicle's contents prior to impound.  (Ex. 5, Radzibaba Deposition at pp. 61-62)

Plaintiff produced no expert to support the causation of the physical injuries he alleges were caused or exacerbated by this incident.

{00332846.DOCX; 1}

## ARGUMENT

**I.   EVIDENCE PRODUCED DURING DISCOVERY ESTABLISHES THAT PLAINTIFF'S CLAIMS ARE UNSUPPORTED AND CONTRADICTED BY UNDISPUTED EVIDENCE.**

### A.   Video-recording of the traffic stop contradicts Plaintiff's version of events.

While it is true that when making factual determinations for purposes of summary judgment, this Court must consider the facts and all reasonable inferences in the light most favorable to Plaintiff, this Court also has an obligation to prevent factually unsupported claims and defenses from going forward.  See *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").  Plaintiff makes numerous claims in this action against Defendants.  These claims have no support other than his own self-serving testimony.  Plaintiff was subject to a valid arrest and taken into custody.  Plaintiff adds to these undisputed facts his claims that the officers used excessive force in removing him from his car and handcuffing him, causing injury or an exacerbation of pre-existing injuries.  Plaintiff, however, has not provided any objective evidence in support of these claims.  While this initially appears to be a dispute of fact, the objective evidence uncovered during discovery resolves this dispute. What is really telling in this case is the medical evidence.  The medical evidence establishes that Plaintiff did not suffer any injury beyond an ankle sprain, and experienced no exacerbation of an injury in this case. As noted by Defense Orthopedic expert Dr. Robert Saltzman, "[t]he actions during the incident did

not cause the shoulder condition or aggravate a previous shoulder injury. … The officers' actions did not aggravate the pre-existing arthritis in his right wrist or knee" (Ex. No. 6, Saltzman Expert Report dated January 11, 2020, at pp. 1-2.)  A review of Plaintiff's extensive medical history led Dr. Saltzman to note that Plaintiff's ankle sprain diagnosed on August 9, 2016 appeared to be related to the incident, and that a 4-week course of physical therapy was appropriate. *Id*. Plaintiff, on the other hand, has produced no records or testimony tying any physical injury to this incident. This goes to the merits of Plaintiff's claims.  For excessive force claims, the extent of Plaintiff's injuries is a relevant factor in determining whether the application of force was reasonable.  *See Bailey v. Kennedy*, 349 F.3d 731, 743 (4th Cir. 2003) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)).  Lack of serious injury or a lack of physical injury in itself may be evidentiary proof that force was not excessive even if the claim is not rejected outright.

**B.  Plaintiff's Claims Fail Because He Has Not Established Causation.**

All torts, including Constitutional torts, require a demonstration of both but for and proximate causation. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014).  For causation regarding injuries, it is well settled that expert medical testimony is required to establish medical causation unless the causation is obvious and within common knowledge.  As noted by the Fourth Circuit, "expert opinion is of course the prime-indeed usually the only-way to prove medical causation." *Crinkley v. Holiday Inns, Inc*., 844 F.2d 156, 164 fn 2; *see also, Fitzgerald v. Manning*, 679 F.2d 341, 350 (4th Cir. 1982) ("it has been recognized that expert testimony is usually necessary to support the conclusion as to causation.") This rule stems from the well-established principle that proof of causation requires a probability of likelihood rather than a mere possibility. "In a long line of decisions in this circuit, we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere

'possibility,' precisely to guard against raw speculation by the fact finder." *Sakaria v. Transworld Airlines*, 8 F.3d 164, 172-73 (4th Cir. 1993).  This Court has also held expert testimony is required to establish medical causation. "'[T]he cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact-finding which properly falls within the province of medical experts . . . proof of the cause must be made by such witnesses.'" *Osunde v. Lewis*, 281 F.R.D. 250, 261 (D. Md. 2012) *quoting Greater Metro. Orthopaedics, P.A. v. Ward*, 147 Md. App. 686, 692 (2002), itself quoting *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91, 99 (1962). In *Osunde*, this Court, relying on Maryland law and the *Wilhelm* case, recognized that if there is no proper expert testimony on causation, there can be no evidence of the claimed injuries. Plaintiff has not produced any evidence that he was injured in any manner as a result of this incident.

Plaintiff and Defendants both agree that Plaintiff had serious pre-existing injuries, but Plaintiff can provide no expert testimony establishing that his injuries were exacerbated by the three officers' actions.  Certainly the parsing out of pre-existing orthopedic injuries with the issue of exacerbation of these same injuries is not something in the purview of the normal person.  Expert testimony is required. Defendants have provided evidence that that "[n]one of his current conditions or limitations can be attributed to the officers' actions during the incident."  (Ex. 6, at p. 2.)  This testimony is undisputed. The fact that Plaintiff has failed to prove causation is fatal to Plaintiff's claims.

## II.     PLAINTIFF'S EXCESSIVE FORCE CLAIMS AGAINST THE THREE OFFICERS FAIL BECAUSE THE ALLEGATIONS AND EVIDENCE ESTABLISH THAT THE FORCED USED WAS REASONABLE.

Plaintiff brings several excessive force-related claims in his Amended Complaint; one under the Fourteenth Amendment (Count II), and another pursuant to Articles 24 & 26 of the

{00332846.DOCX; 1}

Maryland Declaration of Rights (Count VII); and a State battery claim (Count XVIII). These complaints essentially boil down to two incidents of alleged excess force:  (1) removal of Plaintiff from his car; and (2) the fact that Plaintiff was handcuffed from behind.  There are no allegations that any weapon was employed or that any extraneous strikes were delivered.

### A.  All Of Plaintiff's Constitutional Claims Alleging Excessive Force Fail Because The Force Used Was Reasonable. (Counts II and VII).

#### 1.  Cpl. Smith, Officer Radzibaba, and Officer Simmons' Actions Must Be Analyzed In The Context Of A Lawful Arrest.

The starting point for any constitutional claim of excessive force is the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 396 (1989). The *Graham* Court held that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. The test for reasonableness is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. The Maryland Court of Appeals adopted the *Graham* reasonableness standard for evaluating excessive force claims brought pursuant to the Maryland Declaration of rights. *See Richardson v. McGriff*, 361 Md. 437, 452-53 (2000); *see also Randall v. Peaco*, 175 Md. App. 320, 329 (2007) (applying *Graham* and *Richardson* reasonableness standard to a summary judgment determination). Therefore, both the § 1983 Fourteenth Amendment claim (Count II) and the Maryland Declaration of Rights claim (Count VII) can be analyzed pursuant to the *Graham* reasonableness standard. Crucial to the reasonableness analysis in this case is the undisputed fact that Plaintiff was lawfully arrested.  The use of force analysis, therefore, must be viewed through the lens of a lawful arrest.  The Supreme Court has recognized that the right to make an arrest carries with it the right to use the force necessary to make the arrest.  In *Graham*, the Court noted

{00332846.DOCX; 1}

11

that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  The Supreme Court explained the reasoning behind this as follows: Every arrest must be presumed to present a risk of danger to the arresting officer. There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger. Moreover, the possibility that an arrested person will attempt to escape if not properly supervised is obvious. *Washington v. Chrisman*, 455 U.S. 1, 7 (1982). In excessive force cases, several factors are relevant to determine objective reasonableness, including "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396-7. "The extent of the plaintiff's injury is also a relevant consideration." *Bailey v. Kennedy*, 349 F.3d 731, 743 (4th Cir. 2003) (*quoting Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)).

### 2.   Plaintiff's Removal From his Car and Handcuffing Was Reasonable.

By failing to turn his car off and place his hands outside of his vehicle, Plaintiff created a situation where Cpl. Smith reasonably feared that Plaintiff would attempt to flee, to use his vehicle offensively, or to reach in his car for a weapon.  Despite multiple requests to keep his hands out the window, Plaintiff continued to reach into the console of his car.  Plaintiff's justification that he was looking for his mobile phone to record the stop was undercut by the fact that Cpl. Smith has already announced that the stop would be audio and video recorded.

Removal of Plaintiff from his car so that he could be handcuffed is certainly part of the force reasonably used to effect a lawful arrest.  The law is clear that handcuffing suspects who have been lawfully arrested rarely amounts to excessive force. The Fourth Circuit has held that "a

standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified ... in effecting the underlying arrest." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). In this case, Cpl. Smith was interacting with a driver who had pulled his car forward, failed to make and keep both hands visible, and who did not immediately turn off his car when so ordered. These factors objectively heightened the risk and the need to quickly secure the scene for officer safety.  The force Plaintiff alleges in his Complaint simply describes a police officer's motions to quickly handcuff an arrestee.  The Complaint is devoid of any description of the use of either extraneous strikes or the employment of weapons of any type.  Plaintiff was properly arrested, and like most other arrestees, was handcuffed from behind. There are no allegations in the Complaint that would take this ordinary use of force into the realm of the unreasonable or excessive.

### 3. Plaintiff's Excessive Force Claims Fail Under the Fourteenth Amendment, and Were Not Brought Under the Fourth.

Plaintiff has brought the excessive force § 1983 claims pursuant to the Fourteenth Amendment.  Once a person has been arrested and becomes a pretrial detainee, the use of force is governed by the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) abrogated on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam).  It is the Fourth Amendment that governs force alleged used during the course of an arrest.  *See Robles v. Prince George's County*, 302 F.3d 262, 269 (4th Cir. 2002). For this reason alone, Plaintiff's Constitutional excessive force claims should be dismissed.  While Plaintiff brings a cause of action under the Fourteenth Amendment, there is no allegation that Cpl. Smith, Officer Radzibaba, or Officer Simmons employed any other force after Plaintiff was transported from the scene of the arrest. As a result, it does not appear that there is any cognizable claim under the Fourteenth Amendment.

{00332846.DOCX; 1}

### 4. Consideration of Plaintiff's Maryland Article 24 & 26 Claims Follow Constitutional Analysis (Counts VI, VII and IX)

Maryland's Articles 24 & 26 have a common purpose with the Fourth and Fourteenth Amendments. As put by Maryland's Court of Special Appeals in *Padilla v. State*, 180 Md.App. 210, 226 (2008) "cases are legion in which Maryland courts have construed Article 26 *in pari materia* with the Fourth Amendment to the United States Constitution." The Maryland Court of Appeals has never held that Articles 24 or 26 provide greater protection from State interference than their federal counterparts and, when presented with such arguments, Maryland courts have uniformly rejected them. As such, the analysis that entitles Defendants to summary judgment of Counts I, II and IV also requires the dismissal of Plaintiff's parallel Counts VI, VII and IX.

### B. Plaintiff's Battery Claim Fails Because The Officers Were Justified In Using Force During A Lawful Arrest. (Count XVIII).

In Count XVIII, Plaintiff alleges that Defendants committed the common law tort of battery. Under Maryland law, battery is the "unlawful application of force to the person of another." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991). A police officer, however, is not liable for battery when using a reasonable amount of force to effectuate a lawful arrest. *See Ashton v. Brown*, 660 A.2d 447, 471 n.24 (Md. 1995); *Hines v. French*, 157 Md. App. 536, 551 (2004) (*quoting Williams v. Prince George's County*, 112 Md. App. 526, 554 (1996)). Here, Cpl. Smith properly arrested Plaintiff for a misdemeanor committed in his presence: speeding. Cpl. Smith was entitled to use reasonable force to effectuate this arrest, which he did by handcuffing Plaintiff, placing him into the car, and transporting him for booking. Under these circumstances, none of the three individual defendants can be liable for battery under Maryland law.

III.     **PLAINTIFF'S EQUAL PROTECTION CLAIMS FAILS TO STATE A CLAIM**
          **(Counts I and VI).**

The Courts have imposed an onerous burden on a plaintiff who asserts an equal protection

violation grounded in allegations of biased law enforcement. As the Supreme Court has stated:

"Our cases . . . have taken great pains to explain that the [equal protection standard] is a demanding

one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "To succeed on an equal protection

claim, a plaintiff must first demonstrate that he has been treated differently from others with whom

he is similarly situated and that the unequal treatment was the result of intentional or purposeful

discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). There are multiple

problems with Plaintiff's equal protection claim. First, Plaintiff does not allege which actions were

taken against him because of alleged discrimination.  The stop, arrest, and handcuffing certainly

cannot serve as the basis of discrimination as there was probable cause and a lawful arrest.  There

simply is no action that can be attributed to the alleged discrimination and that is fatal to Plaintiff's

claim. The second problem with this equal protection claim is that Plaintiff has failed to show

discriminatory effect. Were this Amended Complaint to have set forth sufficient allegations, the

first prong of equal protection analysis requires the plaintiff to show that the defendants' actions

have a discriminatory effect on individuals similar to the plaintiff.  *Armstrong*, 517 U.S. at 465-

66. Here, no discriminatory effect is alleged with any specificity in Plaintiff's Amended

Complaint. Officer defendants are alleged to have handcuffed Plaintiff in the course of a lawful

arrest, as discussed above.  Plaintiff has also failed to show that defendants acted with

discriminatory intent or purpose. *See Washington v. Davis*, 426 U.S. 229, 242 (1976).

Discriminatory purpose "implies more than intent or an awareness of consequences; [i]t implies

that a decision maker . . . [acted] at least in part because of, not merely in spite of, its adverse

consequences on an identifiable group." *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987)(*quoting Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). The plaintiff must show that the officer "acted with discriminatory purpose specific to [plaintiff's] own case," and that animus regarding the suspect class played a role in the officer's treatment of the specific plaintiff. *Armstrong*, 517 U.S. at 468; *see also U.S. v. Mesa-Roche*, 288 F. Supp. 2d 1172, 1192. Here, Plaintiff has not established that Defendants made any decisions based on a discriminatory intent.  Defendants stopped, removed from his vehicle, and handcuffed Plaintiff in connection with this arrest and in accord with protocol.

## IV.    SEARCHES OF PLAINTIFF'S PERSON INCIDENT TO ARREST AND VEHICLE PRIOR TO IMPOUND WERE NOT UNLAWFUL (Counts IV and IX)

Two searches are described in Plaintiff's Amended Complaint, one of Plaintiff's person at the time he was handcuffed and one of Plaintiff's vehicle prior to its being towed.  As stated by the Supreme Court in *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009) "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."   Among the exceptions to the warrant requirement is a search incident to a lawful arrest.  The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.  The search of Plaintiff's person was reflected on video, and was as minimal.  Because this search was conducted in conjunction to a valid arrest, Plaintiff's claims related to this search must fail.

Another exception to the warrant requirement of the Fourth Amendment is an inventory search. *United States v. Banks,* 482 F.3d 733, 738-39 (4th Cir. 2007).   A proper inventory search is merely "an incidental administrative step following arrest," *Illinois v.*

*Lafayette,* 462 U.S. 640, 644, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), conducted to protect the arrestee from theft of his possessions and to protect the police from false accusations of theft.  Such inventory searches, must "be conducted according to standardized criteria" and with good faith.  *Colorado v. Bertine,* 479 U.S. 367, 374 n. 6, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).  In this matter, the search was conducted immediately following the transportation of Plaintiff, as per typical practice.  There is no allegation that the search was conducted for improper purposes. Without evidence showing a policy violation or improper purpose, claims related to Plaintiff's vehicle search too must fail.

## V.     CPL. SMITH, OFFICER RADZIBABA, AND OFFICER SIMMONS ARE ENTITLED TO FEDERAL QUALIFIED IMMUNITY FOR THE 42 U.S.C. § 1983 CLAIMS.

Public officials such as police officers are immune from suit under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity involves a two prong test: (1) whether the facts alleged or shown establish a violation of a constitutional right; and (2) whether the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

### A.  The Facts Alleged Do Not Establish A Violation Of The Fourth Or Fourteenth Amendments.

As described in more detail above, the actions attributed to Cpl. Smith, Officer Radzibaba, and Officer Simmons are all consistent with their efforts to handcuff Plaintiff.  The situation was objectively dangerous and the need to quickly secure Plaintiff was apparent.   Under these circumstances, the actions of Cpl. Smith were eminently reasonable.  Further, Officers Radzibaba and Simmons responded to a call for assistance, and when they appeared Cpl. Smith was engaged

in efforts to remove Plaintiff from the car.  They used the minimal force necessary to achieve this outcome.  The facts in the case establish that there was no violation of Plaintiff's constitutional rights.  Cpl. Smith, Officer Radzibaba, and Officer Simmons normally handcuff people from behind and that they had no objective reason to believe Plaintiff should not have been handcuffed from behind.  Dr. Saltzman confirmed that they did not exacerbate his pre-existing injuries.

As to the alleged search of Plaintiff person and car, there is no evidence establishing that any search was beyond that incident to the arrest and the temporary impounding of Plaintiff's car.

**B.  Cpl. Smith, Officer Radzibaba and Officer Simmons' Conduct Did Not Violate Any Right That Was Clearly Established at the Time They Arrested Plaintiff.**

**1. Clearly Established Law Must Be Particularized And Beyond Debate.**

The Supreme Court has recently emphasized that "clearly established law" should "not be decided at a high level of generality," but instead the clearly established law must be "particularized" to the facts of the case and the law determined "beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam). The Supreme Court reiterated that it has "'repeatedly told courts -- and the Ninth Circuit in particular -- not to define clearly established law at a high level of generality.'" *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1174 (2015)).

**2. There Is No Clearly Established Law Regarding The Force Used To Remove Plaintiff From His Car And Handcuffing Of Plaintiff.**

As to Plaintiff's allegation of a Fourteenth Amendment violation based upon Cpl. Smith, Officer Radzibaba, and Officer Simmons' efforts to remove Plaintiff from his car and handcuff Plaintiff thereby exacerbating a preexisting injury, there is no clearly established law on this issue. As the Supreme Court held, "[t]he officer's actions do not amount to excessive force if they "are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard

to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Plaintiff's distinct allegation that after he was handcuffed behind his back despite complaints of pain does not change this result. There is no clearly established right that a plaintiff who makes a complaint of pain must have his handcuffs placed in front of him. The Fourth Circuit addressed qualified immunity relating to handcuffing and excessive force. *See E.W. v. Dolgos*, 884 F. 3d 172 (4th Cir. 2018). In *Dolgos*, police arrested a peaceful ten-year old girl and placed her in handcuffs. The Court, placing significant reliance on the girl's young age, found the handcuffing to be unreasonable. *Id*. at 182. However, when the Court proceeded to the qualified immunity analysis, it found that there was no authority that would have given the officers notice that handcuffing in this situation was unconstitutional. *Id*. at 185-87. Even before the *Dolgos* case, the Fourth Circuit had held that "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest." *Brown v. Gilmore*, 278 F.3d at 369.  These cases certainly would not give a reasonable officer notice that the kind of handcuffing that occurred in this case was unconstitutional.  While it does not appear that the Fourth Circuit has addressed the specific issue of handcuffing a suspect with a pre-existing injury, a silence that speaks volumes for purposes of establishing Defendants' entitlement to qualified immunity, the First Circuit has held that officers are entitled to qualified immunity in this situation. In *Hunt v. Massi*, 773 F.3d 361, 370 (1st Cir. 2014), police officers handcuffed a suspect from behind despite the fact that he objected for health reasons. The First Circuit held that the officers were entitled to qualified immunity because "a reasonable officer would not have understood his or her decision to handcuff Hunt with his arms behind his back to constitute excessive force." *Id*. at 370.  The Tenth Circuit, also found that handcuffing a suspect whose arm was full of "plates and screws" did not constitute excessive force."  *Wells v. Okla. ex rel. Dep't of Pub. Safety*, 97

F.3d 1465, 1996 WL 557722 (10th Cir. Sept. 30, 1996) (unpublished). The Sixth Circuit has come

to the opposite conclusion holding that handcuffing an injured suspect from behind even without

a visible sign of injury does constitute excessive force.  See *Walton v. City of Southfield*, 995 F.2d

1331 (6th Cir. 1993).  The *Walton* Court, however, came to this conclusion relying solely on the

general notion that police cannot engage in excessive force without citation to any specific cases.

*Id*. at 1342. This reasoning, provided almost twenty years ago, would almost certainly not survive

the Supreme Court's recent cases requiring qualified immunity to be determined at a high level of

specificity.  In this instance, the Fourth Circuit has not directly addressed the issue and has in fact

has granted qualified immunity recently in a related handcuff and use of force situation. Given

these circumstances, the inevitable conclusion in this case is that Cpl. Smith, Officer Radzibaba,

and Officer Simmons are entitled to qualified immunity.

## VI.     CLAIMS FOR MALICIOUS PROSECUTION FAIL AGAINST OFFICERS RADZIBABA AND OFFICER SIMMONS, AS THEY HAD NO PART IN CHARGING PLAINTIFF, AND AGAINST CPL. SMITH BECAUSE HE HAD PROBABLE CAUSE (COUNT XI).

Plaintiff's malicious prosecution claim (Count XI) was limited by the Court's February 20,

2020 Order to charges relating to disorderly conduct, resisting arrest, failure to obey a reasonable

lawful order, driver use of horn when not reasonably necessary, and disturbing the peace/loud

noise.

As an initial matter, this Count must be dismissed against Defendants Officer Radzibaba

and Officer Simmons, neither of whom had a role in issuing any charges relating to Cpl. Smith's

traffic stop of Plaintiff.  (See Ex. 5, at p. 29. "Q:  So, in other words, whatever made up the

gravamen of the charges was whatever Officer Smith observed.  None of it came from you; is that

right?  A: Yes, sir, that's correct.")

"The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff, 2) termination of the proceeding in favor of the accused, 3) absence of probable cause for the proceeding, and 4) 'malice' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Villeda v. Prince George's County*, 219 F. Supp. 2d 696, 702 (D. Md. 2002).  While the five remaining charges were brought and resolved in Plaintiff's favor, satisfying the first two prongs of malicious prosecution, he cannot satisfy elements 3 and 4.  Cpl. Smith had both probable cause, and there is no evidence that he had any other primary purpose other than brings Plaintiff to justice.  The video of the incident reflects the sustained honking of Plaintiff's vehicle's horn, at after 1:10am in a residential neighborhood.  This honking is shown to occur even as Cpl. Smith's hands are outside the vehicle.  Cpl. Smith had clear probable cause for the driver use of horn when not reasonably necessary, disorderly conduct and disturbing the peace/loud noise charges.  The video also clearly shows Cpl. Smith repeatedly issuing orders to Plaintiff that were not followed: to show his hands, to turn the car off, to exit the vehicle.  Evidence shows the probable cause for the failure to obey a reasonable lawful order charge.  Finally, Plaintiff testified that rather than exiting the vehicle as ordered, he tensed his body.  Cpl. Smith took this as resisting arrest, and charged Plaintiff as such.  Most critically, no evidence has been introduced that suggests Cpl. Smith had any purpose, primary or otherwise, other than bringing Plaintiff to justice.  By failing either of these elements, Plaintiff's Malicious Prosecution Count XI must fail against all three individual defendants.

## VII.   CPL. SMITH, OFFICER RADZIBABA, AND OFFICER SIMMONS DID NOT ACT WITH GROSS NEGLIGENCE (COUNT XIII).

Count XIII asserts gross negligence against the three individual defendants for their conduct toward Plaintiff in using the force necessary to remove him from his car and handcuff

{00332846.DOCX; 1}

him.  Maryland law sets a high bar for plaintiffs attempting to establish gross negligence. To state a claim for gross negligence, a plaintiff must allege facts establishing "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) (quoting *Barbre v. Pope*, 402 Md. 157 (2007)). The Maryland Court of Appeals has reiterated that a party is grossly negligent only if he or she "inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts as if such rights did not exist." *Cooper*, 443 Md. at 708.  It is clear that Cpl. Smith, Officer Radzibaba, and Officer Simmons acted reasonably in this case and their actions can in no way be characterized as grossly negligent.   It was reasonable for the three individual defendants to use the amount of force necessary to handcuff Plaintiff and transport him because Plaintiff was lawfully arrested.  There is no evidence or allegations of an intentional or "utterly indifferent" infliction of harm.  It is also clear that when Plaintiff requested medical care it was promptly provided to him.  Consequently, the gross negligence claim should be dismissed.

## VIII.   THE THREE INDIVIDUAL DEFENDANTS ARE ENTITLED TO MARYLAND MUNICIPAL IMMUNITY FOR ALL OF THE MARYLAND CLAIMS.

Maryland law provides that municipal personnel are immune from suit and from liability for tortious conduct committed within the scope of their public, discretionary duties and without malice.  Cpl. Smith, Officer Radzibaba, and Officer Simmons are "municipal officials" as defined by Md. Code Ann. State Gov't § 5-507; and Maryland law is clear that municipal employees have qualified immunity from liability as prescribed by statute.  *Ireton v. Chambers,* 229 Md. App. 149 (2016) (After jury found that a mayor had committed civil assault but had not acted with the malice required to overcome statutory immunity, judgment was directed in favor of the mayor).

{00332846.DOCX; 1}

For those claims that require the element of malice, Plaintiff has not adequately pled or established malice and the claims against the individual defendants should be dismissed.  To act with malice, an official must engage in "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud. . . .'" *Shoemaker v. Smith*, 353 Md. 143, 163 (1999) (quoting *Montgomery Ward v. Wilson*, 339 Md. 701, 728 n. 5 (1995)). "Merely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984).   In this case, it is undisputed that the police had the lawful authority to arrest Plaintiff and to employ reasonable force to effectuate his lawful arrest. Plaintiff has failed to support a plausible claim of malice or gross negligence and has failed to overcome the individual defendants' entitlement to statutory immunity.   As a result, Cpl. Smith, Officer Radzibaba, and Officer Simmons are entitled to Maryland statutory immunity.

**CONCLUSION**

For the reasons stated above, Defendants Anne Arundel, County, Maryland, Cpl. Smith, Officer Radzibaba, and Officer Simmons respectfully request this Court to enter summary judgment in their favor.

WHEREFORE, the Defendants respectfully request this Court enter an Order:

A.      Granting their Motion for Summary Judgment;

B.      Entering Judgment in favor of the Defendants on all claims;

C.      Dismissing all remaining claims against Anne Arundel County, Maryland, Cpl. Smith, Officer Radzibaba, and Officer Simmons; and

{00332846.DOCX; 1}

D.    For such other and further relief as may be necessary to the Defendants' case.

Respectfully Submitted,

GREGORY J. SWAIN
County Attorney

Date:   June 28, 2021

_____ /s/ *Genevieve G. Marshall*_____

Genevieve G. Marshall (Bar No. 27591)
Senior Assistant County Attorney
2660 Riva Road, 4th Floor
Annapolis, Maryland 21401
Tel: 410-222-7888
lwmars99@aacounty.org
*Attorneys for Defendants*